UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

BRUCE WINSTON GEM CORP.,

              Plaintiff,          09 Civ. 7352 (JGK)

      - against -          MEMORANDUM OPINION AND
                             ORDER

HARRY WINSTON, INC. and HARRY
WINSTON S.A.,

              Defendants.
————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiff Bruce Winston Gem Corp. ("Bruce Winston Gem"
or "BWG") seeks a declaratory judgment against the defendants
Harry Winston, Inc. and Harry Winston S.A. ("Harry Winston" or
"HWI") that Bruce Winston Gem's use of the trademarks BRUCE
WINSTON, BRUCE WINSTON GEM, and BW (the "Bruce Winston
Trademarks") in connection with the sale of jewelry does not
infringe the defendants' trademarks HARRY WINSTON and WINSTON
(the "Harry Winston Trademarks").  The defendants move to
dismiss the plaintiff's action pursuant to Federal Rule of Civil
Procedure 12(b)(1).

    The defendants contend that there is no actual controversy
to be resolved in this declaratory judgment action.  They
contend that they do not object to the plaintiff's current and
planned uses of its marks.  They do however object to the
registration of the BRUCE WINSTON mark, a matter that had

reached the trial stage at the Trademark Trial and Appeal Board ("TTAB") before BWG brought this declaratory judgment action. The defendants contend that this action is not an action to resolve a real controversy as to the plaintiff's use of its mark, as to which there is no current controversy, but rather an attempt to derail a long-pending TTAB proceeding which had reached the trial phase.  The defendants urge that this action should be dismissed and the TTAB should be permitted to complete its long-pending action.

I

In defending a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Procedure 12(b)(1), the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true.  See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  The Court does not, however, draw all reasonable inferences in the plaintiff's favor.  Id.; Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006).  Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether

2

jurisdiction exists.  See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero), 600 F.3d 171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56.  Kamen, 791 F.2d at 1011; see also Leyse v. Bank of Am., No. 09 Civ. 7654, 2010 WL 2382400, at *1 (S.D.N.Y. June 14, 2010).


## II

There is no dispute as to the following facts, except where noted.  Bruce Winston is a son of the famous jeweler Harry Winston, the founder of HWI.  He and his brother, Ronald Winston, took over running the HWI business following their father's death in 1978.  Bruce Winston was employed by HWI until 1991, when Ronald Winston fired him.  (Am. Compl. ¶¶ 11-13.)

After his departure from HWI, Bruce Winston began selling jewelry under the name Bruce Winston Gem Corp.  BWG does not have retail stores and sells jewelry at wholesale and to retail customers out of its office on the third floor of a building on Fifth Avenue in New York City.  (Am. Compl. ¶ 15.)  It sells jewelry on a consignment-only basis.  (Id.)  BWG has an

3

inventory of jewelry in excess of $300,000 and has made sales in
excess of $16 million over eight years, or about $2 million per
year.  (Am. Compl. ¶¶ 15, 17.)  BWG currently has three sales
representatives.  (Y. Nhaissi Decl. ¶¶ 2-3.)

HWI, on the other hand, has a strong international
presence, through its many retail stores.  The record reflects
that in the year ending January 31, 2009, Harry Winston Group
had consolidated net sales in excess of $280 million.  (True
Decl. Ex. B.)

In June 2002, BWG placed an emerald and diamond ring with a
BRUCE WINSTON marking with Sotheby's for an auction on June 12,
2002.  (Am. Compl. ¶ 18.)  HWI, through counsel, sent a letter
to Sotheby's asserting that the ring's BRUCE WINSTON trademark
infringed HWI's trademark rights and requesting that Sotheby's
withdraw the ring from the auction.  (Id.)  After additional
correspondence and HWI threatening to file a temporary
restraining order, BWI withdrew the ring from Sotheby's June
2002 auction.  (Am. Compl. ¶¶ 19-21.)

Recently, BWI has created plans to expand its business.
(Am. Compl. ¶¶ 37-42; E. Nhaissi Decl. ¶ 7.)  The plaintiff
plans to offer its jewelry at auction houses; has retained an
advertising agency to create new promotional materials,
advertisements, and a new corporate logo and trade dress; has
placed an advertisement in the New York Times and in two

4

industry magazines; and has registered to attend a jewelry trade show.  (Am. Compl. ¶¶ 37, 40-42; Y. Nhaissi Decl. ¶¶ 3-7.)  The defendants have made clear that they do not consider the activities that the plaintiff has engaged in to date to be infringements of their marks.  (Defs.' Reply Mem. at 4; Hr'g Tr. at 57, Sept. 2, 2010.)  In short, the defendants do not object to the plaintiff's continued use of Bruce Winston's name in connection with the sale of jewelry during Bruce Winston's lifetime.  (Defs.' Reply Mem. at 4; Hr'g Tr. at 58, Sept. 2, 2010.)  However, the defendants argue that the registration of BWG's mark would be tantamount to giving BWG a "blank check," and BWG could then assign the mark to an entity with plans radically different from the plaintiff's current practices. (Hr'g Tr. at 28-29, 57-58, Sept. 2, 2010.)

On or about June 27, 2001, BWG filed an "intent-to-use" U.S. Trademark Application for the trademark BRUCE WINSTON for gemstones and fine jewelry.  (Am. Compl. ¶ 22.)  The United States Patent and Trademark Office ("PTO") issued a Notice of Publication regarding BWG's application in July 2002.  (Id.)  In September 2002, HWI filed a Notice of Opposition in the Trademark Trial and Appeal Board opposing BWG's application to register the BRUCE WINSTON trademark.  (Am. Comp. ¶ 23.)  In April 2009, a trial schedule was set to determine whether BWG is entitled to registration of the BRUCE WINSTON trademark.  (Am.

Compl. ¶ 25.)  After extensive depositions had been taken, the TTAB trial phase began, but the proceedings were stayed after BWG filed the declaratory judgment action in this Court.  (True Decl. Ex. C.)  The parties have engaged in ongoing settlement discussions since 2002, but no agreement has been reached.[1]  (Am. Compl. ¶ 28.)

BWG filed a Declaratory Judgment Complaint in this action on August 20, 2009.  The defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Thereafter, the plaintiff filed an Amended Complaint on October 26, 2009, and the defendants filed this motion to dismiss.


## III

BWG seeks a declaratory judgment that its use of the trademark BRUCE WINSTON in connection with the marketing and sale of jewelry, diamonds, and gemstones does not infringe the trademarks belonging to HWI.  The plaintiff also seeks a declaratory judgment as to the registrability of the BRUCE WINSTON trademark and an order to the TTAB, pursuant to 15

---

[1] The parties dispute what occurred at a settlement conference that occurred on August 18, 2009.  The meeting was requested by the plaintiff, and the plaintiff asserts that the President of HWI made it clear at that meeting that HWI would not sanction the plaintiff's continued use of its trademarks in any form.  (Am. Compl. ¶ 34.)  The President of HWI denies the truth of the allegation, and swears: "It is not true that I threatened to sue [BWG] over its current use of the name Bruce Winston. . . .  At no time did I or anyone representing the Corporation at that meeting state, threaten or imply that [HWI] would or even might sue [BWG]." (O'Neill Decl. ¶ 4, Nov. 9, 2009.)  The timing of the meeting is questionable in view of the fact that it was requested by BWG and occurred two days before BWG brought the current action.  In any event, statements made in settlement discussions are not admissible in evidence, see Fed. R. Evid. 408(a) (2), and the defendants have made it clear in this litigation that they do not object to BWG's current use of its mark.

U.S.C. § 1119, dismissing the defendants' claims against BWG and ordering the TTAB to issue a registration to BWG for the trademark BRUCE WINSTON upon compliance with the U.S. Trademark Office's procedural rules.

The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The DJA thus explicitly requires that there be an "actual controversy." In addition, for subject matter jurisdiction, there must be an independent basis for federal jurisdiction because it is well established that the DJA does not expand the jurisdiction of the federal courts, and a basis for subject matter jurisdiction other than the DJA must be found. See Albradco, Inc. v. Bevona, 982 F.2d 82, 85 (2d Cir. 1992).

In this case it is undisputed that there is an independent basis for federal jurisdiction. The Complaint asserts that the claims arise under the Lanham Act, 15 U.S.C. § 1501, et seq., relating to trademarks. This is sufficient to allege a basis for federal jurisdiction independent of the DJA.

The question remains, however, whether there is "a case of actual controversy" between the parties sufficient for DJA jurisdiction to be exercised. In MedImmune, Inc. v. Genentech,

Inc., 549 U.S. 118 (2007), the Supreme Court explained that the "question in each case," to determine whether there is an "actual controversy" pursuant to the DJA, "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 127 (internal quotation marks and citation omitted).  The Court noted that the dispute must be

> definite and concrete, touching the legal relations of
> the parties having adverse legal interests; and that
> it be real and substantial and admit of specific
> relief through a decree of a conclusive character as
> distinguished from an opinion advising what the law
> would be upon a hypothetical state of facts.

Id. (internal citation, quotation marks and alterations omitted).

In MedImmune, the parties had entered into a patent licensing agreement.  The petitioner claimed that it was not required to make the licensing payments because the patent was invalid, but it continued to make the payments, under protest, to avoid a threat to have its sales enjoined if it did not continue to make the royalty payments.  The Supreme Court found that an actual controversy existed and rejected a requirement that the declaratory judgment plaintiff have a "reasonable apprehension of imminent suit." Id. at 132 n.11; see SanDisk

<u>Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1380 (Fed.
Cir. 2007) ("The Supreme Court's opinion in <u>MedImmune</u> represents
a rejection of our reasonable apprehension of suit test."); <u>AARP
v. 200 Kelsey Assocs., LLC</u>, 06 Civ. 81, 2009 WL 47499, at *6-7
(S.D.N.Y. Jan. 8, 2009) (discussing the Supreme Court's
rejection of the reasonable apprehension of suit test in
<u>MedImmune</u>).

    Prior to <u>MedImmune</u>, the Court of Appeals for the Second
Circuit made it clear that to obtain a declaratory judgment in a
trademark case, a plaintiff seeking a declaratory judgment that
its conduct did not infringe the defendant's marks was required
to show both that the defendant's conduct "created a real and
reasonable apprehension of liability on the part of plaintiff"
and that the plaintiff had "engaged in a course of conduct which
has brought it into adversarial conflict with the defendant."
<u>See</u> <u>Starter Corp. v. Converse, Inc.</u>, 84 F.3d 592, 595-596 (2d
Cir. 1996) (per curiam).  The Court of Appeals made it plain
that the requirement of adversarial conduct meant that the
plaintiff, the potential infringer, must have engaged in a
course of conduct evidencing a "definite intent and apparent
ability to commence use of the marks on the product."  <u>Id.</u> at
596 (internal citations and quotation marks omitted).

    After <u>MedImmune</u>, the first prong of the <u>Starter</u> test cannot
survive because the Supreme Court has made it clear that there

need not be an imminent threat of liability.  Nevertheless, the
second prong of the Starter test should survive because it is
anchored in the requirement of the specificity and immediacy of
the dispute which the Court reaffirmed in MedImmune.
Establishing that the plaintiff "engaged in a course of conduct
evidencing a definite intent and apparent ability to commence
use of the [allegedly infringing] marks" remains a necessary
requirement for a valid claim for declaratory judgment relief.
See Starter, 84 F.3d at 595-596 (internal quotation marks
omitted); AARP, 2009 WL 47499, at *7.  In addition, the
plaintiff must still show that it has more than a "vague or
general desire" to use the mark at issue.  See Starter, 84 F.3d
at 596.

     The plaintiff BWG has failed to show that an "actual
controversy" pursuant to the DJA exists.  The Supreme Court no
longer requires that there be a threat of suit.  However, BWG
must present evidence of a "sufficient intent and apparent
ability" to use the BRUCE WINSTON trademark in an infringing
manner.  This is an unusual case.  BWG has operated its small
and personal business selling jewelry other than through retail
outlets.  The defendants have not alleged in this case that what
BWG is doing is infringing HWI's marks. Indeed even after
reviewing its single advertisement in the New York Times, two
issues of a trade journal and its appearance at a trade show,

the defendants concede that these actions do not infringe HWI's
marks.  Even taking all of the asserted BWG activities into
account, HWI does not assert that those actions have violated
HWI's marks and has represented to the Court that it has no
intent to stop those activities.  (Defs.' Reply Mem. at 4; Hr'g
Tr. at 58, Sept. 2, 2010 ("We can simply say, and we have, what
[BWG] is doing today, as long as Bruce Winston is alive, we
don't have a problem with it. . . . [W]e have nine years of
basically knowing what they have done, and until this point, we
don't have a problem with what they're doing.".)  Thus, to date,
BWG has not engaged in any infringing activities and has not put
forth evidence suggesting it has any intent or ability to do so.

The defendants, however, rightly object to a declaratory
judgment action that would be an action to determine what
activities BWG could engage in that it has not yet engaged in
and which it did not have any intent or ability to pursue.  The
defendants rightly object to the use of a declaratory judgment
action to construct the future framework of the interaction
between the parties in the absence of a specific dispute about
an imminent activity.

There are numerous hypothetical situations that could cause
actual conflicts between the parties.  For example, while the
defendants have not objected to the plaintiff's advertisements
or signs, it is conceivable that future advertisements could be

11

misleading or deceptive.  While the plaintiff has not presented
any plans for a retail store, much less any details for such a
store, the defendants might well object to such plans, depending
on all the circumstances.  But these are the kinds of
hypothetical situations that are inappropriate for determination
in a declaratory judgment action.  In <u>MedImmune</u>, the Supreme
Court reiterated that a declaratory judgment action should not
be used to advise "what the law would be upon a hypothetical
state of facts." 549 U.S. at 127.

The defendants argue that the only adversity between the
parties is the fact that BWG has sought to register the mark
BRUCE WINSTON, and the defendants have opposed that
registration.  Indeed, the current action was brought in the
middle of the TTAB trial phase and has stayed that proceeding
after it had been pending for several years.  The inference is
plain that the present action was a maneuver by the plaintiff to
avoid a decision by the TTAB on the registration of its mark.
But the existence of a dispute before the TTAB is insufficient
to establish sufficient adversity for purposes of a declaratory
judgment action. See <u>Progressive Apparel Group, Inc. v.</u>
<u>Anheuser-Busch, Inc.</u>, No. 95 Civ. 2794, 1996 WL 50227, at *4
(S.D.N.Y. Feb. 8, 1996) ("The present dispute concerns only the
registration of a trademark. There is no threat of an
infringement suit, either direct or indirect, and there is no

reasonable basis on which to conclude that this dispute will eventually develop into an infringement suit. The appropriate resolution of the only concrete dispute between the parties is a matter for Trademark Trial and Appeal Board."). While the emphasis in Progressive on the need for a threat of an infringement suit does not survive MedImmune, the emphasis on the need for a sufficiently specific and immediate controversy between the parties, other than the TTAB proceeding, remains persuasive. Any decision by the TTAB can be appealed to the appropriate court. See 15 U.S.C. § 1071. This is not a case where the plaintiff needs an adjudication of its rights so that it can conduct its business affairs without abandoning a mark or risking potential damages. See Goya Foods, Inc. v. Tropicana Prods. Inc., 846 F.2d 848, 853-54 (2d Cir. 1988). Rather, this is a case where the defendants do not object to the plaintiff's current use of its mark, and the only immediate and definite controversy is over the registration of that mark. See id. at 853 ("If a district court action involves only the issue of whether a mark is entitled to registration and if subject matter jurisdiction is available, . . . the doctrine of primary jurisdiction might well be applicable . . . .") (internal citation omitted).

Moreover, even if there were an actual case or controversy and the Court had jurisdiction under the DJA, the court would

decline to exercise that jurisdiction in this case.  A court's exercise of jurisdiction pursuant to the DJA is discretionary. See AARP, 2009 WL 47499, at *4 ("Even after a plaintiff demonstrates that the case or controversy requirement has been met, the permissive language of § 2201(a) gives a district court discretion to determine whether or not it should actually exercise its declaratory judgment authority.").  The Supreme Court reiterated in MedImmune that the DJA "confer[s]on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  549 U.S. at 136 (internal citation and quotation marks omitted).  The Court of Appeals for the Second Circuit has held that federal district courts must entertain declaratory judgment actions when the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" or "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted).

In this case there are significant factors that militate against exercising jurisdiction.  The issues in this case are hypothetical because the defendants do not object to the activities that the plaintiff is now pursuing, and any declaratory judgment action would necessarily entail advisory opinions into how far the plaintiffs can go in its future

activities without infringing on the defendants' marks.  This is
the type of declaratory judgment action which, if not actually
foreclosed by the case or controversy requirement, is still too
abstract to serve a useful purpose and is unlikely to end
uncertainty and controversy between the parties.  Moreover, the
plaintiff waited to bring this action until the trial phase on
the registrability of its mark before the TTAB had begun.  The
TTAB action was then stayed to allow this action to proceed.
The decision in this case will not expedite the resolution of
the registrability of the plaintiff's mark.  That issue would be
more rapidly determined by allowing the TTAB to reach a decision
which could then be reviewed by an appropriate court.  The
effect of the current proceeding is to derail the TTAB
proceeding without the resolution of any other specific concrete
controversy.  The pursuit of this action does not further an
efficient resolution of any dispute between the parties.

    The plaintiff's second cause of action asks the Court to
enter a declaratory judgment with the effect of requiring the
TTAB to register the BRUCE WINSTON trademark.  Section 1119 of
title 15 of the United States Code gives courts the authority to
cancel trademark registrations.  See 15 U.S.C. § 1119 ("[T]he
court may determine the right to registration, order the
cancelation of registrations, in whole or in part, restore
canceled registrations, and otherwise rectify the register . . .

.").  The plaintiff cites this statute but does not rely on it as a basis for the Court to satisfy its request in the second cause of action.  (Hr'g Tr. at 50, Sept. 2, 2010.)  Rather, the plaintiff argues that in deciding the declaratory judgment on infringement, a necessary consequence will be that the Court will make findings as to the registrability of its mark which will then be followed by the PTO.  However, this is not an independent basis for seeking a declaratory judgment.  See Manganaro Foods, Inc. v. Manganaro's Hero-Boy, Inc., No. 01 Civ. 0849, 2002 WL 1560789 at *10 (S.D.N.Y. July 15, 2002) ("[A] federal court's authority to determine registrability . . . depends on a properly-instituted and otherwise jurisdictionally-supported action involving a registered trademark.") (internal citations omitted).  For the reasons explained above, there is no actual case or controversy that provides jurisdiction under the DJA.  Moreover, the Court would exercise its discretion to decline to entertain the declaratory judgment action if there were jurisdiction.  The existence of the dispute over the registrability of the plaintiff's mark is an insufficient basis to continue the action in this Court.

For all of these reasons, the Court will not exercise jurisdiction to entertain the declaratory judgment action.  The defendants' motion to dismiss is **granted**.

IV

The plaintiff moves for leave to amend or an evidentiary hearing.  These requests appear to be requests for delay.  The plaintiff has already filed an amended complaint in response to an earlier motion to dismiss.  Moreover, the plaintiff does not show what additional facts it would plead that would save this case from dismissal.  The motion is therefore **denied**.  <u>See, e.g.</u>, <u>Mackensworth v. S.S. Am. Merchant</u>, 28 F.3d 246, 251 (2d Cir. 1994) (finding that futility is a valid reason for denying leave to amend); <u>see also</u> <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53-54 (2d Cir. 1999) ("[W]here the plaintiff is unable to show that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

## CONCLUSION

The Court has carefully considered all of the parties' arguments.  To the extent they are not dealt with above, they are either moot or without merit.  For the reasons explained, the defendants' motion to dismiss the plaintiff's Amended Complaint is **granted**.   The plaintiff's motion for leave to amend or an evidentiary hearing is **denied**.   The clerk is

17

directed to enter judgment dismissing the amended complaint and

closing the case.   The Clerk is also directed to close Docket

Nos. 17 and 23.


SO ORDERED.


Dated:     New York, New York
           September 15, 2010

                                           John G. Koeltl
                                    United States District Judge

18